# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENNIS CHASE,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>    Defendants. | Civil Action No. 17-274 (JEB) |

## MEMORANDUM OPINION

*Pro se* Plaintiff Dennis Chase, a federal prisoner, seeks to obtain documents relating to his 2011 arrest, booking, and detention in Minnesota. To that end, he submitted several Freedom of Information Act requests to Defendants Department of Justice, Executive Office for U.S. Attorneys, U.S. Marshals Service, and Federal Bureau of Investigation in late 2015 and early 2016. When these requests were left unanswered for over a year, he filed this civil action to compel Defendants to respond. Defendants thereafter released several hundred pages of information; claiming that they have fully satisfied their FOIA obligations, they now move for summary judgment. Believing the opposite, Chase has cross-moved for summary judgment. Finding Defendants have adequately complied with FOIA's dictates, the Court will grant their Motion.

## I.     Background

Beginning in November 2015, Plaintiff sent FOIA requests to USMS and EOUSA seeking, *inter alia*, all records concerning his detention, arrest, booking, and criminal prosecution for the transportation and possession of child pornography in 2011. See ECF No. 1 (Complaint),

1

Exhs. A (USMS FOIA Request); E (EOUSA FOIA Request). Both agencies proceeded to request verification of identity – although EOUSA did so 44 days beyond the 20 business days required by FOIA – which Chase then provided. See Compl., Exhs. A; B (US Marshal Verification Request); C (Certification of Identity); D (Letter to USMS); E; F (EOUSA Verification Request); G (Certification of Identity). Several months of follow-up calls by Chase and delayed or limited responses by EOUSA and USMS ensued. See Compl. at 4-6. Having grown frustrated with this non-responsiveness, Plaintiff filed this Complaint on February 23, 2017. Spurred to action, those agencies then conducted a search for relevant documents and have now released 458 pages to Plaintiff, 15 of which are partially redacted. See ECF Nos. 28-2 (Declaration of Princina Stone), ¶ 13; 28-9 (Declaration of William E. Bordley), ¶ 7. EOUSA additionally referred approximately 1,216 pages of records to the FBI for its review and direct response to Plaintiff. See ECF No. 28-11 (Declaration of David M. Hardy), ¶ 5.

The Bureau then sent Plaintiff a letter notifying him that it had received the records from EOUSA and informing him of the estimated total cost for processing his request. See Hardy Decl., Exh. A. Chase responded with a request for a waiver of those fees pursuant to 28 C.F.R. §§ 16.10(K), which requires agencies to waive fees when disclosure of the requested information is in the public interest. Id., Exh. B. The FBI denied his request. Id., Exh. C. Plaintiff then appealed to DOJ's Office of Information Policy, id., Exh. E, but that appeal was denied. Id., Exh. F. In response, Chase successfully sought leave to add the FBI as a party to this suit. See Minute Order of October 10, 2017. Given this state of affairs, both parties have now filed for summary judgment.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, the Court may accept an "agency's affidavits, without pre-summary judgment discovery, if the affidavits are made in good faith and provide reasonably specific detail concerning the methods used to produce the information sought." Broaddrick v. Exec. Office of the President, 139 F. Supp. 2d 55, 64 (D.D.C. 2001). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)

(quotation marks and citation omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III. Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See id. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 754-55. "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The Court will look first at the adequacy of Defendants' search for responsive documents, turn next to the exemptions they claim justify withholding certain documents and

information, then assess the segregability of the withheld information, and finally discuss whether the FBI properly denied Plaintiff's fee-waiver request.

A. Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (*per curiam*). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See Perry, 684 F.2d at 127. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

Attached to their Motion, Defendants have submitted the Declarations of Princina Stone, Attorney Advisor with EOUSA; Bernetta Miller, Paralegal Specialist in the Civil Division of the

United States Attorney's Office for the District of Minnesota; William Bordley, Associate General Counsel of USMS; and David Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, of the FBI, which explain in detail the steps that Defendants took to search for responsive records, including:

- Searches by the lead attorney assigned to Plaintiff's case in the U.S. Attorney's Office for the District of Minnesota for all responsive records, see ECF No. 28-10 (Declaration of Bernetta Miller), ¶¶ 11-12;

- Search of "CaseView" – the system used by the USAO-DMN to track investigations and cases – by Plaintiff's name, see id., ¶ 9;

- Search of USMS systems including the Justice Detainee Information System Prisoner Processing and Population Management/Prisoner Tracking System and the Warrant Information Network using Plaintiff's name, date of birth, and USMS registration number, see Bordley Decl., ¶¶ 4-5;

- Searches by USMS district personnel in the District of Minnesota for all records pertaining to him, see id., ¶ 6; and

- Certification that there were no records systems or locations not searched where responsive files might have been found. See Miller Decl., ¶ 17.

Plaintiff does not allege that the above-detailed search was inadequate, but rather that Defendants' delayed responses somehow impair its validity. Chase is indeed correct that Defendants have taken a considerable amount of time to respond to his requests and seem to have dropped the ball a few times with regard to their communications with him. Unfortunately for Chase, however, this type of conduct does not render Defendants' search inadequate. Absent contrary evidence – which Plaintiff does not provide – Defendants' declarations are sufficient to show that they complied with FOIA. See Perry, 684 F.2d at 127.

Chase additionally argues that because EOUSA "needlessly and wrongly [*sic*]" referred documents to the FBI, see ECF No. 32 (Pl. Opp. & MSJ) at 13, and that their description of that referral lacks sufficient detail, their explanation is "less than adequate and responsive." Id. at 5-

6

6, 8. When an agency receives a FOIA request for records in its possession, "it must take responsibility for processing the request" even if the documents originated elsewhere. See McGehee v. CIA, 697 F.2d 1095, 1110 (D.C. Cir. 1983). Yet, when the agency processing the request concludes that another agency is best able to determine whether to disclose the record, it should refer those records to that agency. See 28 C.F.R. § 16.4(a)(2)(i) ("[T]he component or agency that originated the record will be presumed to be best able to make the disclosure determination."). That said, a referral may constitute improper withholding "if its net effect is significantly to impair the requesters ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." McGehee, 697 F.2d at 1110. The referral is improper "unless the agency can offer a reasonable explanation for its procedure." Id.

Notwithstanding Plaintiff's allegations, this is not a case where one agency has attempted to pass off its FOIA responsibilities to another; rather, EOUSA properly referred material to the FBI, which, after review, was willing to release that material to Chase provided he pay the duplication fees. As the originating agency, see Hardy Decl., ¶ 5, the FBI could properly review whether any exemptions might apply before releasing the records to Chase. The only impediment to the release of the FBI materials is Plaintiff's own inability or unwillingness to pay $59.70 or meet the statutory requirements for a fee waiver, as discussed below. See Hardy Decl., Exh. A. Finally, Plaintiff protests that the Bureau misstates the number of pages referred to it by EOUSA (1,294 vs. 1,216), see Pl. Opp. & MSJ at 8, but Hardy's declaration clarifies that the larger number was merely an "incorrect[] state[ment]," Hardy Decl. at 3 n.1, assuaging any potential concerns over the adequacy of Defendants' search description.

The Court, therefore, finds summary judgment proper on the adequacy of the search.

B. Exemptions

Although Plaintiff's challenges to Defendants' withholdings are not particularly direct or specific, the Court will nonetheless address whether the claimed exemptions apply to the documents and information withheld.

1. *Exemption 3 (DOJ/EOUSA)*

Fifty-one pages of grand-jury transcripts constitute the entirety of the withheld documents by DOJ/EOUSA. See ECF No. 28-3 (Stone Decl., Exh. A). As the basis for withholding these transcripts, Defendants cite, *inter alia*, FOIA Exemption 3, which covers records "specifically exempted from disclosure by statute," provided that such statute either "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Two statutes are relevant here: Federal Rule of Criminal Procedure 6(e) and the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d).

Rule 6(e), which bars the disclosure of matters occurring before a grand jury, is recognized as a "statute" for Exemption 3 purposes. See Fund for Constitutional Gov't. v. Nat'l Archives & Records Serv., 656 F.2d 856, 867 (D.C. Cir. 1981). The Rule's grand-jury-secrecy requirement is applied broadly and embraces any information that "tend[s] to reveal some secret aspect of the grand jury's investigation, [including] the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." Lopez v. Dep't. of Justice, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (citation omitted). In the absence of a statutory exception to the general presumption of grand-jury secrecy – not an issue here – Rule 6 is "quite clear that disclosure of matters

occurring before the grand jury is the exception and not the rule," and "the rule's ban on disclosure is for FOIA purposes absolute and falls within . . . Exemption 3." Fund for Constitutional Gov't., 656 F.2d at 868.

As a separate and independent ground, the Child Victims' Act protects from disclosure certain records containing personally identifiable information pertaining to children who were the victim or in some way involved in criminal proceedings. In this instance, Defendants explain that Exemption 3, in conjunction with 18 U.S.C. § 3509(d), is being invoked "to protect grand jury witnesses who provided descriptions of minor children who were victims of child pornography or were sexually exploited, and also to protect from disclosure the identity of the child victims." Stone Decl., ¶ 21.

As the documents withheld here encompass transcripts of actual testimony before the grand jury and, as Stone attests, contain the identity and descriptions of minor children, they clearly fall within the parameters of Exemption 3. While Defendants also seek to shield the transcripts based on Exemptions 5 and 7(E), the Court need not consider such argument since Exemption 3 alone protects the material from disclosure.

  2. *Exemptions 7(C) and 7(E) (USMS)*

USMS, in turn, released 15 pages of documents with portions redacted pursuant to FOIA Exemptions 7(C) and 7(E). See Bordley Decl., ¶ 7. Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six specific harms. See 5 U.S.C. § 552(b)(7). Exemption 7(C) covers records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," while 7(E) protects documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions."

9

For either exemption, the Government must first show that the documents were in fact "compiled for law enforcement purposes" and not for some other reason. See Pub. Emps. for Environmental Responsibility v. U.S. Sec., Int'l Boundary and Water Comm'n, U.S.-Mexico, 740 F.3d 195, 203-04 (D.C. Cir. 2014). Given that all the records at issue relate to USMS's pretrial custody of Plaintiff and other USMS prisoners, see Bordley Decl., ¶ 8, the Government clears this Exemption 7 threshold.

Relying on Exemption 7(C), USMS withheld information pertaining to the names of law enforcement and other personnel who prepared or assisted with the preparation of the documents in performance of their duties. Id. The first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a privacy interest in the materials sought. See Am. Civil Liberties Union v. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011). This privacy interest must be "substantial", but for the purposes of 7(C), "substantial means less than it might seem [–] [a] substantial privacy interest is anything greater than a *de minimis* privacy interest." Pinson v. U.S. Dep't of Justice, 202 F. Supp. 3d 86, 99-101 (D.D.C. 2016) (applying balancing analysis from FOIA Exemption 6 to Exemption 7(C) and quoting Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008)). Given the personal nature of the information withheld here – *e.g.*, names and phone numbers of third parties, medical personnel, and law-enforcement agents – the Court finds a substantial privacy interest in the materials. Even if the Court had found only a modest privacy interest in this personal information, moreover, it would have reached the same outcome because, as will be discussed below, Chase's request implicates no public interest: "[W]here [a court] find[s] that the request implicates no public interest at all, [it] need not linger over the balance; something . . . outweighs nothing every time.'" Beck v. Dep't

of Justice, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (quoting Nat'l Ass'n of Retired Fed'l Emps. v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989)).

Finally, USMS is claiming Exemption 7(E) for one discrete redaction – a USMS Fed Ex account number. See Bordley Decl., ¶ 9. The release of this number, "generally unknown to the public," could compromise an investigation and therefore "reasonably be expected to risk circumvention of the law." Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 36 (D.D.C. 2012) (citation omitted). As such, this information was properly withheld.

    C. Segregability

Although Chase does not challenge Defendants on this issue, the Court must independently assess whether "[a]ny reasonably segregable portion" of the records could be produced "after deletion of the portions which are exempt." 5 U.S.C. § 552(b); see Morley v. CIA, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (district court has "an affirmative duty to consider" segregability and must "make[] an express finding on segregability" before granting Government summary judgment) (citations omitted). Although the Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1117 (D.C. Cir. 2007), this presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability. Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977). Defendants persuasively assert that they examined the documents line by line to determine whether any reasonably segregable information could be released and proceeded to withhold only that information that was exempt from disclosure pursuant to a FOIA exemption or so intertwined with exempt information such that segregation was not possible. See Stone Decl., ¶

42; Bordley Decl., ¶ 10. For example, they only withheld entire pages when covered by a broad exemption, such as in the case of grand-jury transcripts. As no segregability problem exists here, the Court grants Defendants' Motion on this issue.

   D. Fees

All that is left of the dispute, then, is whether the FBI properly denied Chase's fee-waiver request. While the Bureau maintains that no fee waiver is warranted here, Plaintiff disagrees, additionally implying that the agency's delay and bad faith should preclude it from seeking fees.

Agencies are authorized to charge requesters fees to recover costs of processing FOIA requests and to promulgate regulations outlining procedures and guidelines for charging those fees. See 5 U.S.C. § 552(a)(4)(A). "Under well-established case law, fee waiver requests must be made with 'reasonable specificity,' and based on more than 'conclusory allegations.' [The Court is] also mindful that Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'" Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal citations omitted). The requesting party bears the burden of proof. See Larson v. CIA, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

A reduction or waiver of fees is required where disclosure is in the "public interest because it is likely to [1] contribute significantly to public understanding of the operations or activities of the government and [2] is not primarily in the commercial interest of the requester." 5 U.S.C. § 552 (a)(4)(A)(iii). Since the FBI concedes that disclosure is not primarily in Chase's commercial interest, see Def. MSJ at 17, the following "public understanding" factors are all that are relevant: (1) whether the records concern the operations or activities of the government, (2) whether the disclosure is likely to contribute to an understanding of government operations or activities, (3) whether disclosure will contribute to public understanding, and (4) the significance

of the contribution to increasing public understanding. See Marino v. Dep't of Justice, 993 F. Supp. 2d 14, 19-20 (D.D.C. 2014). For a request to be in the "public interest," all four criteria must be satisfied. See id. at 20 (citing Judicial Watch v. Dep't of Justice, 365 F.3d 1108, 1126 (D.C. Cir. 2004)).

Although the records Chase requested concern the operations or activities of government, their disclosure is unlikely to contribute to or significantly increase the public's understanding of them. First, Plaintiff has not demonstrated an ability or interest in disclosing the records broadly to the public. See Nat'l Sec. Counselors v. Dep't of Justice, 848 F.3d 467, 473-74 (D.C. Cir. 2017) (denying waiver where requester "failed to provide adequate evidence suggesting that it would effectively disseminate its requested information in furtherance of the public's understanding"). He has also failed to allege that the release of documents exclusively concerning him would provide a better understanding of the government at large or be of interest to the general public. See Forest Guardians v. Dep't of Interior, 416 F.3d 1173, 1179 (10th Cir. 2005) (emphasizing that "FOIA fee waivers are limited to disclosures that enlighten more than just the individual requester"); Judicial Watch, Inc. v. Dep't of Justice, 185 F. Supp. 2d 54, 62 (D.D.C. 2002) (stating that requester must show that disclosure will contribute to understanding of "reasonably broad audience of persons") (quoting 28 CFR § 16.11(k)(2)(iii)); see also Pub. Employees for Envtl. Responsibility v. Dep't of Commerce, 968 F. Supp. 2d 88, 101-04 (D.D.C. 2013) (Plaintiff failed to satisfy second and fourth "public understanding" factors because "[i]nformation related to one individual . . . is not likely to clear [the] bar" of increasing public knowledge of the functions of government). Finally, it appears that Plaintiff's primary motivation is to obtain records to assist in challenging his conviction. "Insofar as [Chase] seeks information to facilitate a challenge to his conviction, the court considers disclosure less likely to

13

contribute to public understanding." Ortloff v. Dep't of Justice & FBI, No. 02-5170, 2002 WL 31777630, at *1 (D.C. Cir. Dec. 11, 2002) (*per curiam*) (citations omitted); see also Marino, 993 F. Supp. 2d at 20 n.5 (finding fact that records were requested to "undermine [a] conviction and term of incarceration greatly undercuts supposed benefit that will accrue to the public if the records are released").

Notwithstanding his lack of qualifications for a waiver, Chase argues that the FBI should have nonetheless granted his request because EOUSA's release of 430 pages without cost demonstrates that a waiver had in fact been granted. See Pl. Opp. & MSJ at 9. Plaintiff's argument is a non-starter. Whether an agency provides a requester with documents free of charge above and beyond what it is required to by statute has no bearing on whether that agency (or a receiving agency) may later charge that requester for additional material.

The Court, in fact, noting that Defendants had failed to comply with FOIA's timelines for processing requests and appeals, inquired, *sua sponte*, whether their non-compliance constituted a waiver of their right to request fees. See ECF No. 33 (Order). Although this would have been the case had the FBI been requesting search fees, see id. at 1-2, Defendants clarified that the FBI only requested duplication fees, see ECF No. 34 (Response), which an agency can still request regardless of its non-compliance with FOIA's timeliness requirements. See 5 U.S.C. § 552(a)(4)(A)(viii).

Finally, throughout Plaintiff's Opposition, he seems to contend that Defendants are not entitled to summary judgment because they acted here in bad faith. While it is true that summary judgment for an agency may be inappropriate in such an instance because such conduct could undermine the reliability of affidavits the court must rely on, see Hamilton Sec. Grp. Inc. v. Dep't of Hous. & Urban Dev., 106 F. Supp. 2d 23, 33 (D.D.C. 2000), aff'd 2001 WL 238162

(D.C. Cir. Feb. 23, 2001), it is less clear that an agency's bad faith excuses a requester from paying duplication fees. The Court will nonetheless consider Chase's arguments.

In determining what constitutes bad faith, "[c]ourts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith." Skurow v. Dep't of Homeland Sec., 892 F. Supp. 2d 319, 326 (D.D.C. 2012) (one-year delay insufficient for finding agency bad faith; claims of bad faith were purely speculative); see also Competitive Enter. Inst. v. Nat'l Aeronautics & Space Admin., 989 F. Supp. 2d 74, 88-89 (D.D.C. 2013) (two-year delay from inadequate staffing not caused by bad faith); Thomas v. Dep't of Justice, 531 F. Supp. 2d 102, 109 (D.D.C. 2008) (three-year delay in agency's response to FOIA request not "purposeful" and absent additional evidence did not indicate bad faith); Goland v. CIA, 607 F.2d 339, 355 (D.C. Cir. 1978) ("[I]n view of the well-publicized problems created by the statute's 10- and 20-day time limits for processing FOIA requests and appeals, the CIA's delay alone cannot be said to indicate an absence of good faith.") (footnote omitted); Fischer v. Dep't of Justice, 723 F. Supp. 2d 104, 108 (D.D.C. 2010) (rejecting argument that failure to produce documents until after litigation commenced evinces bad faith).

Plaintiff's Opposition alleges numerous instances of bad faith on the Government's part. In addition to Defendants' repeated failures to respond to his requests before his Complaint was filed, Chase argues that they used "needless stay[s] of proceedings," attempts "to confuse the court," and other stalling methods to intentionally drag their feet in responding to his requests. See Pl. Opp. & MSJ at 13. As noted above, while Defendants are clearly not faultless for the delay in processing and releasing the initial batch of documents, mere delay in responding to a FOIA request is routinely found to be insufficient to support a finding of bad faith, even in cases where the agency delay is considerably longer than Defendants' year-long delay here. See

Competitive Enter. Inst., 989 F. Supp. 2d at 88-89 (two years); Thomas, 531 F. Supp. 2d at 109 (three years). In addition, Defendants' repeated failures to respond to Plaintiff's communications and apparent misplacement of some of his correspondence do not, without more, constitute bad faith. See, e.g., Budik v. Dep't of the Army, 742 F. Supp. 2d 20, 33 (D.D.C. 2010) (ten-month delay caused by administrative error did not indicate bad faith). The Court concludes, accordingly, that these circumstances do not warrant denying summary judgment.

## IV.     Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting judgment in Defendants' favor.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: March 15, 2018